**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| GUSTAVO MCKENZIE,<br><br>                              Plaintiff,<br><br>vs.<br><br>SERGEANT G. ELLIS, JOHN MITCHELL, M. VORISE, W. TIETZ, T. OCHOA, D. BELL and Does 1 and 2.<br>                              Defendants. | CASE NO. 10cv01490-LAB (MDD)<br><br>REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE RE: DEFENDANTS' MOTION TO DISMISS THE PLAINTIFF'S COMPLAINT<br><br>[Doc. No. 31.] |

Defendants' motion to dismiss Plaintiff's Complaint has been referred to Magistrate Judge Dembin pursuant to 28 U.S.C. §636(b)(1) and Local Civil Rule HC.2 of the United States District Court for the Southern District of California. For the reasons set forth herein, it is recommended that Defendants' motion be **DENIED** in part, and **GRANTED** in part.

## I. PROCEDURAL BACKGROUND

Plaintiff Gustavo McKenzie, (hereinafter "Plaintiff" or "McKenzie"), is a state prisoner currently incarcerated in Calipatria State Prison ("Calipatria"). [Doc. No. 1 at 10.] On March 25, 2010, Plaintiff filed a civil rights complaint ("Complaint") in Superior Court against certain prison employees alleging violations of his First and Fourteenth Amendment rights. [Doc. No. 1.] On September 8, 2010, Defendants' Notice of Removal to this Court was granted. [Doc. No. 19.]

## II. STATEMENT OF FACTS

Plaintiff is currently incarcerated in Calipatria state prison, after being transferred there from Delano Reception Center. [Doc. No. 1 at 10.] He asserts he is Rastafarian and due to his beliefs does not eat red meat or pork. [Doc. No. 1 at 10.] Plaintiff alleges that his religious dietary needs were met until he was transferred to Administrative Segregation Facility A4 on February 6, 2009. [Doc. No. 1 at 11.]

Upon his transfer to Administrative Segregation, Plaintiff alleges that he notified Defendant Sergeant Ellis of his religious dietary needs and that floor officers taped a sign outside his cell reflecting his requirements. [Doc. No. 1 at 11.] Despite the sign, Plaintiff states he was served hot dogs the very next day. [Doc. No. 1 at 11.] Plaintiff alleges that when he complained, prison officers told him they were "chicken hot dogs" at Defendant Ellis' direction. [Doc. No. 23 at 7.] Plaintiff submitted a grievance on February 8, 2009, regarding this incident. [Doc. No. 1 at 17.] This grievance was rejected and returned as incomplete on February 10, 2009. Plaintiff was notified that he had fifteen days to remedy and re-submit the grievance. [Doc. No. 1 at 16.] It appears from the record before the Court that Plaintiff did not resubmit this grievance.

Plaintiff alleges that the "blatant denial of [his] religious diet continued" and that on March 7, 2009, "Sergeant G. Ellis deliberately and wilfully tore off a copy of my 'Religious diet card' ...from the front wall of my cell... which was posted on the wall was (*sic*) to alert officers of my appropriate 'Religious Diet'". [Doc. No. 1 at 23.] On March 10, 2009, Plaintiff submitted a new grievance, given prison log number A0900487 (hereinafter the "487" grievance), regarding this incident. [Doc. No. 1 at 23.]

At a later date, unclear from the record, Plaintiff submitted another new grievance, given log number A0900857 (hereinafter the "857" grievance), requesting a religious diet and demanding that Defendant Mitchell, the Food Manager, and Defendant Vorise, the Supervising Cook, take responsibility for the injuries he suffered by not having appropriate meals. [Doc. No. 12-13.] On March 27, 2009, Plaintiff was interviewed by Defendant Vorise regarding the 857 grievance. [Doc. No. 1 at 32.] During the meeting, Vorise informed Plaintiff that there was no evidence of Plaintiff's participation in the Religious Diet Program, and gave Plaintiff the forms

1 needed to be added to the list. [Doc. No. 1 at 32.]

2 On March 30, 2009, Sergeant Rigney granted the 487 grievance, stating that after speaking
3 with Sergeant Tietz arrangements were made for Plaintiff to receive special meals and that as of
4 March 30, 2009, Plaintiff's meal requirements were being met. [Doc. No. 1 at 24.]

5 It is unclear when Defendant appealed the 857 grievance, but on April 3, 2009, Defendant
6 Vorise partially granted the appeal, stating that Plaintiff had received the required forms and would
7 be added to the Religious Diet Participants List upon approval of the Chaplain. [Doc. No. 1 at 32.]
8 Plaintiff appealed Vorise's decision for a First Level of Review. [Doc. No. 1 at 36.] In his First
9 Level of Review, Plaintiff again requested to be placed on the Religious Diet List and to have
10 Food Services staff assume responsibility for the injuries he sustained as a result of starvation
11 caused by being served inappropriate meals. [Doc. No. 1 at 36.]

12 On May 13, 2009, Defendant Tietz interviewed Plaintiff regarding the 857 grievance
13 appeal. [Doc. No. 1 at 36.] Defendant Tietz partially granted the 857 appeal noting that Plaintiff
14 was already receiving vegetarian meals, but denied the appeal as to Plaintiff's alleged injuries from
15 starvation. [Doc. No. 1 at 36.] Defendant Tietz stated that he was unable to grant Plaintiff's
16 request regarding injuries because there was no evidence, such as a physician's diagnosis, of any
17 injury due to starvation. [Doc. No. 1 at 36.] Plaintiff's Second Level of Review and Director's
18 Level of Review both affirmed Defendant Tietz's decision. [Doc. No. 1 at 37-38, 40-41.]

19 On March 25, 2010 Plaintiff filed a civil rights complaint ("Complaint") in Superior Court.
20 Defendants filed a Notice of Removal on July 14, 2010, which the Court granted on September 8,
21 2010. [Doc. No. 19 at 6.] Defendants subsequently filed a Motion to Dismiss Plaintiff's
22 Complaint on November 22, 2010. [Doc. No. 19.] On December 22, 2010, Plaintiff filed his
23 Response in Opposition to Defendants' Motion to Dismiss. [Doc. No. 23.]

### III. STANDARD OF REVIEW

25 A Rule 12(b)(6) dismissal may be based on either a "'lack of a cognizable legal theory' or
26 'the absence of sufficient facts alleged under a cognizable legal theory.'" *Johnson v. Riverside*
27 *Healthcare System*, *LP*, 534 F.3d 1116, 1121-22 (9th Cir. 2008) (quoting *Balistreri v. Pacifica*
28 *Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990)). In other words, the plaintiff's complaint must

provide a "short and plain statement of the claim showing that [he] is entitled to relief." *Id*. (citing Fed.R.Civ.P. 8(a)(2)). "Specific facts are not necessary; the statement need only give the defendant[s] fair notice of what ... the claim is and the grounds upon which it rests." *Erickson v. Pardus*, 551 U.S. 89, 127 S. Ct. 2197, 2200 (2007) (internal quotation marks omitted).

A motion to dismiss should be granted if the plaintiff fails to proffer "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, S. Ct. 1937, 1949 (2009).

The court need not, however, accept as true allegations that are conclusory, legal conclusions, unwarranted deductions of fact or unreasonable inferences. *See Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001); *Iqbal*, 129 S. Ct. at 1949 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."); *Twombly*, 550 U.S. at 555 (on motion to dismiss court is "not bound to accept as true a legal conclusion couched as a factual allegation."). "The pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the defendant-unlawfully-harmed-me accusation." *Iqbal*, 129 S.Ct. at 1949 (*quoting Twombly*, 550 U.S. at 555).

In addition, claims asserted by pro se petitioners, "however in artfully pleaded," are held "to less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519-20 (1972); *Erickson*, 551 U.S. at 94. Because "Iqbal incorporated the Twombly pleading standard and Twombly did not alter courts' treatment of pro se filings, [courts] continue to construe pro se filings liberally when evaluating them under Iqbal." *Hebbe v. Pliler*, 627 F.3d 338, 342 & n.7 (9th Cir. 2010) (citing *Bretz v. Kelman*, 773 F.2d 1026, 1027 n.1 (9th Cir. 1985) (noting that courts "have an obligation where the petitioner is pro se, particularly in civil rights cases, to construe the pleadings liberally and to afford the petitioner the benefit of any doubt.")).

In addition, when resolving a motion to dismiss for failure to state a claim, the court may not generally consider materials outside  the pleadings, except for exhibits which are attached. *See* Fed.R.Civ.P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the

1 pleading for all purposes."); *Schneider v. California Dept. of Corrections*, 151 F.3d 1194, 1197 n.1
2 (9th Cir. 1998); *Jacobellis v. State Farm Fire & Casualty Co.*, 120 F.3d 171, 172 (9th Cir. 1997);
3 *Allarcom Pay Television Ltd. v. General Instrument Corp.*, 69 F.3d 381, 385 (9th Cir. 1995). "The
4 focus of any Rule 12(b)(6) dismissal ... is the complaint." *Schneider*, 151 F.3d at 1197 n.1. The
5 court may also review "materials of which the court may take judicial notice." *Barron v. Reich*, 13
6 F.3d 1370, 1377 (9th Cir. 1994), including public records and "proceedings in other courts, both
7 within and without the federal judicial system, if those proceedings have a direct relation to
8 matters at issue." *Bias v. Moynihan*, 508 F.3d 1212, 1225 (9th Cir. Nov. 2007) (quoting *Bennett v.*
9 *Medtronic, Inc.*, 285 F.3d 801, 803 n.2 (9th Cir. 2002)).

## IV. DISCUSSION

11 Defendants' Motion to Dismiss asserts that Plaintiff's Complaint for First and Fourteenth
12 Amendment rights violations should be dismissed. Defendants contend that:

13 A) Plaintiff failed to exhaust his remedies through the prison's grievance procedures
14 regarding the quality of the vegetarian menu;

15 B) Plaintiff failed to file his claim with the Victims Compensation and Government Claims
16 Board in accordance with the California Tort Claims Act;

17 C) Plaintiff failed to allege facts necessary to satisfy every element of his First and
18 Fourteenth Amendment claims and specifically he failed to show he suffered real and immediate
19 injury as a result of Defendants' conduct; and,

20 D) Defendants are entitled to qualified immunity. [Doc. No. 19 at 6.]
21 The Court also will address dismissal as to Defendants Bell and Ochoa.

22 In his Opposition to Respondent's Motion to Dismiss, Plaintiff asserts he "made no claim
23 whatsoever, regarding the content of a vegetarian menu". [Doc. No. 23 at 4.] Plaintiff also asserts
24 that he did exhaust all available administrative remedies, and that his claim is based on willful and
25 deliberate actions of Defendants to deprive him of a diet consistent with his religious practice.
26 [Doc. No. 23 at 2.]

27 **A. Unexhausted Claims**

28 The Ninth Circuit has held that "failure to exhaust nonjudicial remedies is a matter of

abatement" not going to the merits of the case and is properly raised pursuant to a motion to dismiss, including a non-enumerated motion under Fed.R.Civ.P. 12(b). *Ritza v. Int'l Longshoremen's & Warehousemen's Union*, 837 F.2d 365, 368-69 (9th Cir. 1988); *Wyatt v. Terhune*, 315 F.3d 1108, 1119 (9th Cir. 2003) (finding a non-enumerated motion under Rule 12(b) to be the "proper pretrial motion for establishing nonexhaustion" of administrative remedies under 42 U.S.C. § 1997e(a).[1] *Wyatt* also holds that non-exhaustion of administrative remedies as set forth in 42 U.S.C. § 1997e(a) is an affirmative defense which defendant prison officials have the burden of raising and proving. *Wyatt*, 315 F.3d at 1119. However, unlike Rule 12(b)(6), "[i]n deciding a motion to dismiss for failure to exhaust nonjudicial remedies, the court may look beyond the pleadings and decide disputed issues of fact." Id. at 1120 (*citing Ritza*, 837 F.2d at 369).

The Prison Litigation and Reform Act ("PLRA") provides that "no action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other federal law, by a prisoner confined in any jail, prison or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. 1997e(a). Exhaustion is mandatory and not left to the discretion of the district court. *Woodford v Ngo*, 584 U.S. 81 (2006).

The State of California provides its prisoners and parolees the right to administratively appeal "any departmental decision, action, condition or policy perceived by those individuals as adversely affecting their welfare." Cal Code Regs., tit. 15 § 3084.1(a). In order to exhaust available administrative remedies within this system, a prisoner must proceed through several levels: (1) informal resolution, (2) formal written appeal on a CDC 602 inmate appeal form, (3) second level appeal to the institution head or designee, and (4) third level appeal to the Director of the California Department of Corrections. *Barry v. Ratelle*, 985 F.Supp.1235, 1237 (S.D. Cal. 1997) (citing Cal.Code Regs., tit.15 § 3084.5). The third or "Director's Level" of review shall be final and exhausts all administrative remedies available in the Department [of Corrections.]" Cal.

---

[1] In so finding, the Ninth Circuit made clear that unlike a motion for summary judgment, "dismissal of an action on the ground of failure to exhaust administrative remedies is not on the merits." *Wyatt*, 315 F.3d at 1119 (citation omitted). Thus, if the court finds that the prisoner has failed to exhaust nonjudicial remedies, "the proper remedy is dismissal of the claim without prejudice." *Id*. (citing *Ritza*, 837 F.2d at 368 & n.3).

1   Dep't of Corrections Operations Manual, § 54100.11, "*Levels of Review*;" *Barry*, 985 F. Supp. at

2   1237-38; *Irvin v. Zamora*, 161 F.Supp. 2d 1125, 1129 (S.D. Cal. 2001).

3       Defendants assert that Plaintiff failed to exhaust his remedies through administrative
4   procedures in the jail and therefore his complaint should be dismissed under the non-enumerated
5   provisions of Fed.R.Civ.P. 12(b). [Doc. No. 19 at 6.] Defendants contend that Plaintiff did not
6   raise a claim regarding the quality or content of the vegetarian meals within the prison system
7   procedures, but raises it here, thus resulting in an unexhausted claim. [Doc. No. 19 at 6.]
8   Defendants have misconstrued Plaintiff's Complaint. Plaintiff does not contest the quality of the
9   vegetarian menu and clearly says so in his Opposition to Defendant's Motion to Dismiss. [Doc.
10  No. 23 at 4.] His Complaint is about the delay in receiving a vegetarian diet and for injuries
11  sustained as a consequence. That claim, as contained in grievance 857, was addressed and
12  exhausted pursuant to prison process.

13      Based on the foregoing, it is recommended that Defendant's Motion to Dismiss for lack of
14  exhaustion be **DENIED**.

15  **B. California Tort Claims Act**

16      Defendants' seek dismissal on the grounds that Plaintiff has asserted a state claim for
17  damages within the meaning of the California Tort Claims Act without first timely filing with the
18  Victim Compensation and Government Claims Board ("VCGCB") as required by Gov. Code
19  sections 905.2, 911.2, 945.4 and 950.2. [Doc. No. 19 at 10.] Although Defendants correctly assert
20  that a state tort claim not previously filed with the VCGCB would be grounds for dismissal, the
21  Defendants again have misconstrued the Complaint. Plaintiff has not alleged a state law claim for
22  damages; he alleges a violation of the Constitution and attendant damages. The single cause of
23  action presented in the Complaint is for violations of Plaintiff's First and Fourteenth Amendment
24  rights to freedom of religious practice. [Doc. No. 1 at 8.] Plaintiff specifically alleges that
25  Defendants "directly; or by coercion, denied me my 'Right to Religious Practice,' repeatedly
26  causing me to suffer many times from hunger", and requests to be compensated for punitive
27  damages, emotional distress and exemplary damages. [Doc. No. 1 at 9-10.] There is no state law
28  claim for damages presented within the meaning of the California Tort Claims Act.

For these reasons, it is recommended that Defendants' Motion to dismiss for Plaintiff's failure to file his claims with the VCGCB be **DENIED**.

### C. First and Fourteenth Amendment Claims

Defendants argue that Plaintiff failed to allege facts necessary to satisfy every element of his First and Fourteenth Amendment claim. [Doc. No. 19 at 11.] Specifically, Defendants contend that Plaintiff suffered no real and immediate injury as a result of Defendants' conduct. [Doc. No. 19 at 11.] Defendants also contend that Mitchell, Vorise, and Tietz cannot incur liability since their actions were not the proximate cause of any violation. [Doc. No. 19 at 15.] For the reasons stated below, it is recommended that the motion be **DENIED IN PART**, and **GRANTED IN PART**.

#### 1. First Amendment

Defendants assert that "Plaintiff fails to allege that any Defendant caused him any real and immediate injury", and "there must be an allegation of some 'real and immediate' injury to sustain a federal claim".[2] [Doc. No. 14 at 17, 18.] A plaintiff does not need to show injury in addition to a violation of his First Amendment rights. "The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373, (1976). Plaintiff need not allege facts showing injury beyond the violation of his free exercise of religion, as prisoners retain their rights to free exercise of religion granted by the First Amendment. *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987).

Not every limitation of a prisoner's religious freedom, however, violates the First Amendment. A prisoner's incarceration, security concerns or correctional goals may limit the practicing of that religion. *Id*. "When a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." *Turner v. Safley*, 482 U.S. 78, 89, (1987). The *Turner* court set four balancing factors to determine

---

[2] The cases cited are not relevant to Defendants' contention that a Plaintiff needs to sustain additional real and immediate injury in a First Amendment claim. See *L.A. v. Lyons*, 461 U.S. 95, 101-102 (1983) ( real and immediate injury necessary to satisfy the threshold requirement of alleging an actual case or controversy); *Benson v. Cady*, 761 F.2d 335, 339 (7th Cir. 1985) (a section 1983 tort damage action includes the element of actual damage to the Plaintiff)).

whether a prison regulation is reasonably related to legitimate penological interests:

    (1) Whether there is a "valid, rational connection between the prison regulation and the legitimate government interests; put forward to justify it";

    (2) Whether there are "alternative means of exercising the right that remain open to prison inmates";

    (3) Whether "accommodation of the asserted constitutional right" will have an effect on "guards and other inmates, and on the allocation of prison resources generally"; and

    (4) Whether there is an "absence of ready alternatives" versus the "existence of obvious, easy alternatives."

*Turner,* 482 U.S. at 89-90, *(*quoting *Block v. Rutherford*, 468 U.S. 576, 586 (1984)).

Plaintiff alleges that there was an excessive delay in adding him to the religious diet program and that prison officials continue to refuse to provide him a regular meal tray when chicken or fish are being served. [Doc. No. 1 at 11, 14.] The court will address these allegations separately.

Plaintiff states his religious dietary needs were met up until he was transferred to Administrative Segregation facility A4 on February 6, 2009. [Doc. No. 1 at 11.] The Complaint and supporting documents reflect that Plaintiff began receiving an appropriate diet by March 30, 2009. [Doc. No. 1 at 24.] The result is that for a period of approximately 52 days, Plaintiff was served a regular tray of food which, at times, he could not eat, in whole or in part, due to his Rastafarian religion. Defendants assert in their Motion to Dismiss that any temporary delay Plaintiff experienced in receiving compliant meals is justified under the *Turner* analysis by the prison's interest in providing a simple and efficient meal program. [Doc. No. 19 at 14.] Given this, the *Turner* factors must be examined to determine whether Calipatria's prison regulation is reasonably related to legitimate penological interests. *Id.* The burden is on Defendants to show they would prevail on the *Turner* factors. *See Shakur v. Schriro*, 514 F.3d 878, 887 (9th Cir. 2008).

1         The first *Turner* factor weighs in favor of Defendants as there is a legitimate government
2 interest in keeping prison food services simple and efficient. *Ward v. Walsh*, 1 F. 3d 873, 877 (9th
3 Cir. 1993). Plaintiff was interviewed by Defendant Vorise on March 27, 2009, approximately one
4 and a half months after his transfer. [Doc. No. 1 at 32.] During the interview, Plaintiff was
5 informed that there was no evidence of his participation in the Religious Diet Program in his file.
6 [Doc. No. 1 at 32.] During the interview, Plaintiff was provided the forms needed for him to be
7 added to the program. [Doc. No. 1 at 32.] After Plaintiff completed the Religious Diet request
8 forms, they were forwarded to the prison Chaplain for approval. [Doc. No. 1 at 32.] Records
9 submitted by Plaintiff with his Complaint show that by March 30, 2009, as a result of the
10 previously filed 487 grievance, Plaintiff's meal requirements were met. [Doc. No. 1 at 24.] On
11 May 11, 2009, Plaintiff was added to the Religious Diet Participants List. [Doc. No. 1 at 39.] Due
12 to Defendants' interest in ensuring that only qualified inmates receive special meals, the prison
13 regulation of requiring inmates to fill out the necessary forms is justified. *Ward*, 1 F. 3d at 877.
14 The Defendants likely would sustain their burden on this factor.

15         The second *Turner* factor examines whether Plaintiff could practice his religion in other
16 available ways. This factor was not addressed.

17         The third *Turner* factor, whether accommodation of the Plaintiff's needs would effect
18 guards, other inmates or prison resources generally also was not addressed.

19         The fourth *Turner* factor, whether or not easily implemented alternatives to the prison's
20 current policy are available, also was unaddressed.

21         Given that the record before the Court does not provide enough information for a
22 determination on the second, third and fourth *Turner* factors, the Defendants have not met their
23 burden of establishing that the prison regulation which caused the delay is valid. The Court also
24 cannot determine as a matter of law that a 52 day delay in receiving religious meals does not cause
25 irreparable injury and raise serious First Amendment questions. *See Elrod*, 427 U.S. at 373,
26 (1976)*; See also Warsoldier v. Woodford*, 418 F.3d 989, 1002 (9th Cir. 2005) (court found
27 preliminary injunction prohibiting enforcement of prison grooming policy in violation of religious
28 rights was justified even though prisoner was due to be released in 18 days). As Defendants have

1  not met their burden, dismissal at this stage is not warranted.

2  Plaintiff also complains that although he is now on the Religious Diet List and receiving
3  vegetarian meals, correctional officers are "at the moment...blatantly refusing to give me a regular
4  tray, when chicken or turkey are being served." [Doc. No. 1 at 14]. Plaintiff does not allege,
5  however, the manner in which this impacts his ability to practice his religion. In *Shakur*, Plaintiff
6  complained that the vegetarian diet caused him gas and aggravated his hiatal hernia which affected
7  his purity and cleanliness and thus interfered with his Muslims prayers. *Shakur*, 514 F.3d at 882.
8  The Ninth Circuit remanded the case to determine if the digestive problems placed significant
9  pressures on Shakur and his religious practices. *Id*. at 889. Unlike in *Shakur*, Plaintiff does not
10 complain that the vegetarian diet he is receiving imposes a burden on his religious beliefs. The
11 freedom to pick and choose which tray he wishes to receive at each meal of the day depending on
12 the menu items is not included in the right to free exercise of religion. Nor does the First
13 Amendment require the prison to determine which meals this particular Defendant may be willing
14 to have on a daily basis.

15 The Court recommends that Defendants' Motion to Dismiss regarding Plaintiff's First
16 Amendment claim be **DENIED** as to Plaintiff's allegation of excessive delay in receiving
17 vegetarian meals. The Court also recommends that the Motion to be **GRANTED** as to Plaintiff's
18 First Amendment claim of not receiving a regular meal tray when fish or poultry are served.

19 **2. Fourteenth Amendment**

20 The Fourteenth Amendment provides that no state shall "deny to any person within its
21 jurisdiction the equal protection of the laws." U.S. Const. Amend. XIV, § 1. The Equal Protection
22 Clause requires the state to provide a prisoner with "a reasonable opportunity of pursuing his faith
23 comparable to the opportunity afforded fellow prisoners who adhere to conventional religious
24 precepts." *Cruz v. Beto*, 405 U.S. 319, 322 (1972). The state is not allowed to give differential
25 treatment depending on religious beliefs, but must "treat all similarly situated people equally." *See*
26 *City of Cleburne Living Center*, 473 U.S. 432, 439 (1985). In *Shakur*, a Muslim plaintiff
27 complained of disparate treatment in receiving a vegetarian meal plan, and being denied Halal or
28 Kosher meat which is allowable in his religion. *Shakur*, 514 F.3d at 891. Jewish inmates,

1 however, were given Kosher meals which included meat at an additional cost. *Id*. In their
2 response, defendants claimed that providing Shakur and other Muslims with Halal or Kosher meat
3 is expensive. *Id*. While providing Shakur with Halal or Kosher meat would cause the prison to
4 incur additional cost, the court noted the cost was no greater than that incurred to provide its
5 Jewish inmates with Kosher meat. *Id*. Given this, the court found that summary judgment on
6 Shakur's Equal Protection claim was inappropriate. *Id*.

7 Here, Plaintiff asserts a claim for relief under "the First Amendment through its 'Free
8 Exercise Clause', and the Fourteenth Amendment through its 'Equal Protection Clause' because
9 "[D]efendants, named herein, has (*sic*) directly; or by coercion denied me my 'right to religious
10 practice.'" [Doc. No. 1 at 8, 9.] The gravamen of Plaintiff's complaint is the delay in adding him
11 to the religious diet program, and refusing to give him a regular tray when chicken or fish are
12 being served. [Doc. No. 1 at 11, 14.]

13 Plaintiff has failed adequately to allege a violation of his Fourteenth Amendment right to
14 equal protection of the laws. Unlike in *Shakur* where the plaintiff alleged disparate treatment
15 between Jewish inmates receiving Kosher meat and Muslim inmates not receiving Halal meat,
16 Plaintiff has not alleged that the delay in providing him vegetarian meals reflects disparate
17 treatment from other inmates seeking religious meals. Consequently, Plaintiff's Fourteenth
18 Amendment claim is deficient.

19 Accordingly, it is recommended that Defendants' motion to dismiss Plaintiff's request for
20 relief pursuant to the Fourteenth Amendment be **GRANTED**.

21 **3. Claims Against Defendants Mitchell, Vorise, and Tietz**

22 Defendants argue that the claims against Defendants Mitchell, Vorise and Tietz be
23 dismissed as they merely responded to Plaintiff's appeal and were not personally involved with
24 any possible rights violation. [Doc. No. 19 at 15.] A person deprives another "of a constitutional
25 right, within the meaning of § 1983 if he does an affirmative act, participates in another's
26 affirmative act, or omits to perform an act which he is legally required to do that causes the
27 deprivation of which [the plaintiff complains]." *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir.
28 1978). A plaintiff must show how each defendant's personal involvement or conduct caused the

1 constitutional violation. *King v. Atiyeh*, 814 F.2d 565, 568 (9th Cir. 1987).

2 Plaintiff has not alleged enough facts to show that Mitchell, Vorise and Tietz directly participated in the delay of Plaintiff receiving vegetarian meals. Plaintiff does not state when he submitted the 857 grievance to Defendant Mitchell, the Food Manager, who referred the grievance to Defendant Vorise, the Supervising Cook. [Doc. No. 12-13.] The Complaint shows that on March 27, 2009, Plaintiff was interviewed by Defendant Vorise who gave him the necessary forms to be added to the list upon approval of the Chaplain. [Doc. No. 1 at 32, 39.] Three days later, on March 30, 2009, Plaintiff's first grievance, the 487 grievance, was granted by Sergeant Rigney and, according to the records submitted by the Plaintiff, the vegetarian meals were being provided as of that date. [Doc. No. 1 at 24.] Plaintiff's complaint does not show that Mitchell, Vorise and Tietz were dilatory in addressing his grievance which caused the delay leading to the alleged First Amendment rights violation.

Because the factual allegations against Defendants Mitchell, Vorise and Tietz are deficient, the Court recommends **GRANTING** Defendants' Motion to Dismiss with regard to these Defendants without prejudice. The Court recognizes that "[l]eave to amend should be granted unless the pleading could not possibly be cured by the allegation of other facts, and should be granted more liberally to pro se plaintiffs." *McQuillon v. Schwarzenegger*, 369 F.3d 1091, 1099 (9th Cir. 2004).

### D. Defendant Ellis Is Not Entitled To Qualified Immunity.

Defendants assert they are entitled to qualified immunity because a reasonable prison official would not believe his actions violated Plaintiff's rights. [Doc. No. 19 at 17.] Considering the rulings above, the Court need only address qualified immunity as it may apply to Defendant Ellis. Defendants also argue that Defendant Ellis instructed officials not to serve Plaintiff religious meals because of his "reasonable belief that Plaintiff had not sufficiently availed himself of the Religious Meal Program". [Doc. No. 19 at 15.] Qualified immunity only shields state officials from civil damages suits as long as their actions do not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). State officials who are incompetent or who knowingly violate the law are

1 not shielded. *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

2     Plaintiff claims that he told Defendant Ellis of his religious dietary needs upon his arrival
3 in administrative segregation. [Doc. No. 1 at 11.] Plaintiff claims Defendant Ellis deliberately
4 denied him his religious diet, and that "Sgt. G. Ellis tore off another copy of my 'religious diet
5 card' off (*sic*) my cell door." [Doc. No. 1 at 12.] Plaintiff's allegations against Defendant Ellis are
6 contrary to Defendants' assertion that Ellis acted with the reasonable belief that Plaintiff had not
7 availed himself of the Religious Meal Program. The court must give deference to the Plaintiff's
8 allegations, taking them to be true in a motion to dismiss. *Cooper v. Pate*, 378 U.S. 546 (1964). A
9 state official who knowingly denies a prisoner his religious diet in violation of the First
10 Amendment is not entitled to qualified immunity. Plaintiff's complaint sufficiently raises an
11 inference that Defendant Ellis was personally involved in the constitutional violation and acted
12 deliberately or with deliberate indifference regarding Plaintiff's right to receive a religious diet.
13 *Farmer v. Brennan*, 511 U.S. at 847 (1994). Plaintiff has proffered "enough facts to state a claim
14 for relief that is plausible on its face" and dismissal as to Defendant Ellis is inappropriate.
15 *Twombly*, 550 U.S. at 544 (2007).

16     The Court recommends that Defendants' Motion to Dismiss with regards to Defendant
17 Ellis be **DENIED**.

18     **E. Defendants Bell and Ochoa.**

19     Plaintiff does not specify in his Complaint any allegations against Defendant Bell other
20 than his "blatantly refusing to give me a regular tray, when chicken or turkey are being served".
21 [Doc. No. 1 at 14.] As discussed above, Plaintiff has not alleged how this impacts his ability to
22 practice his religion. Accordingly, Defendant Bell did not violate Plaintiff's rights by refusing to
23 serve him a regular tray now that he receives the vegetarian tray as requested.

24     As Plaintiff does not state sufficient allegations against Defendant Bell to constitute a cause
25 of action, the Court recommends **GRANTING** Defendants' Motion to Dismiss Defendant Bell.

26     Regarding Defendant Ochoa, the record reflects that he has not been served with the
27 Complaint. Federal Rule of Civil Procedure 45(m) states that: "[i]f a defendant is not served
28 within 120 days after the complaint is filed, the court- on motion or on its own after notice to the

1  plaintiff- must dismiss the action without prejudice against that defendant or order that service be
2  made within a specified time." Fed. R. Civ. P. 45(m).  The Plaintiff received notice that service
3  for Defendant Ochoa remained unexecuted in the Court's Order Re: Motion to Remand on
4  September 6, 2010.  [Doc. No. 4 at 1.]  As the other Defendants were served on June 21, 2010,
5  over a year has passed and service on Defendant Ochoa remains unexecuted.
6   Therefore, the Court **RECOMMENDS** that the complaint against Defendant Ochoa be
7  **DISMISSED** without prejudice.

## VI. CONCLUSION AND RECOMMENDATION

9  For all of the foregoing reasons **IT IS HEREBY RECOMMENDED** that the Court issue
10 an Order:
11  (1) **APPROVING AND ADOPTING** this Report and Recommendation;
12  (2) **DENYING** Respondent's Motion to Dismiss for qualified immunity;
13  (3) **DENYING** Respondent's Motion to Dismiss for failure to exhaust a claim;
14  (4) **DENYING** Respondent's Motion to Dismiss regarding Plaintiff's failure to file his
15 claims with the VCGCB;
16  (5) **DENYING** Respondent's Motion to Dismiss Plaintiff's First Amendment claim
17 regarding the delay in Plaintiff receiving a religious diet;
18  (6) **GRANTING** Defendants' Motion to Dismiss all claims against Defendants Mitchell,
19 Vorise and Tietz without prejudice;
20  (7) **GRANTING** Defendants' Motion to Dismiss Plaintiff's Fourteenth Amendment claim
21 against all Defendants without prejudice;
22  (8) **GRANTING** Defendants' Motion to Dismiss Plaintiff's First Amendment claim based
23 upon Plaintiff allegedly not receiving a regular tray when chicken or fish are served without
24 prejudice; and,
25  (9) **DENYING** Defendants' request that the Court take Judicial Notice of the VCGCB
26 declaration.
27  The Court also **RECOMMENDS** dismissing the claims against Defendant Bell for failure
28 to state a claim and the claims against Defendant Ochoa for want of prosecution, without

prejudice.

**IT IS FURTHER ORDERED** that any objections to this report may be filed no later than **August 3, 2011**, and any reply to the objections shall be filed with the Court and served on all parties no later than **August 10, 2011.**  The parties are advised that failure to file objections within the specified time may waive the right to raise those objections on appeal of Court's order.

**IT IS SO ORDERED.**

**DATED:  July 18, 2011**

**Hon. Mitchell D. Dembin**
**U.S. Magistrate Judge**