# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GUSTAVO McKENZIE,<br><br>　　　　　　　Plaintiff,<br><br>vs.<br><br>SERGEANT G. ELLIS, JOHN MITCHELL, M. VORISE, W. TIETZ, T. OCHOA, D. BELL and DOES 1 and 2,<br><br>　　　　　　　Defendants. | CASE NO. 10cv1490-LAB (AJB)<br><br>**ORDER: (1) OVERRULING PLAINTIFF'S OBJECTIONS TO REPORT AND RECOMMENDATION;**<br><br>**(2) SUSTAINING DEFENDANTS' OBJECTIONS TO REPORT AND RECOMMENDATION;**<br><br>**(3) ADOPTING REPORT AND RECOMMENDATION AS MODIFIED; AND**<br><br>**(4) DISMISSING FEDERAL CLAIMS; AND**<br><br>**ORDER OF REMAND** |

　　　　This action was removed from state court on July 14, 2010, based on federal question jurisdiction. After dismissal of his original complaint, Plaintiff Gustavo McKenzie, a prisoner in state custody, filed his amended complaint (the "FAC") on November 4, 2011. Defendants then moved to dismiss. This motion was referred to Magistrate Judge Mitchell Dembin for a report and recommendation. On May 15, Judge Dembin issued his report and recommendation (the "R&R"), to which Plaintiff and Defendants have both filed objections. Defendants also filed a reply to McKenzie's objections.

**Legal Standards**

A district court has jurisdiction to review a Magistrate Judge's report and recommendation on dispositive matters. Fed. R. Civ. P. 72(b). "The district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to." *Id*. "A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). The Court reviews de novo those portions of the R&R to which specific written objection is made. *United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003) (en banc). "The statute makes it clear that the district judge must review the magistrate judge's findings and recommendations de novo if objection is made, but not otherwise." *Id*.

When determining whether a complaint states a claim, the Court accepts all allegations of material fact in the complaint as true and construes them in the light most favorable to the non-moving party. *Cedars-Sinai Medical Center v. National League of Postmasters of U.S.*, 497 F.3d 972, 975 (9th Cir. 2007) (citation omitted). However, the Court is "not required to accept as true conclusory allegations which are contradicted by documents referred to in the complaint," and does "not . . . necessarily assume the truth of legal conclusions merely because they are cast in the form of factual allegations." *Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1139 (9th Cir. 2003) (citations and quotation marks omitted). The pleading standard is governed by *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). This standard doesn't allow a plaintiff to plead mere "labels and conclusions;" rather, he must allege facts sufficient to raise his "right to relief above the speculative level." *Twombly* at 555. His claim for relief must be plausible, not merely possible. *Iqbal* at 678.

The Court construes pro se pleadings liberally, *King v. Atiyeh*, 814 F.2d 565, 567 (9th Cir.1987), but will not supply facts a plaintiff has not pleaded. *See Ivey v. Board of Regents of the Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir.1982).

/ / /

/ / /

**Discussion**

McKenzie, a California state prisoner, brings civil rights claims arising primarily from alleged failure to provide him with a religiously-appropriate diet. He identifies himself as Rastafarian, and says he can eat fish and poultry but not red meat or pork. He also brings claims pertaining to alleged retaliation against him for complaining. The initial complaint was somewhat vague and omitted significant information. Nevertheless, Defendants didn't object to the first report and recommendation that their motion to dismiss should be denied in part. This was understandable bearing in mind the complaint's generality. The FAC, however, clarified McKenzie's factual allegations a good deal, including setting forth a clearer timeline of events.

The FAC alleges facts that were largely omitted from the original complaint. It alleges that while McKenzie was at North Kern State Prison in Delano, California, the chaplain there issued him a religious diet card. He was later transferred to Calipatria State Prison on January 23, 2009. He says his religious diet card was honored during his first weeks there. Then on February 6, 2009, he says he was transferred to administrative segregation, the alleged deprivations began.

The FAC concerns itself with two alleged periods of deprivation. First, from February 7 to May 14, 2009, McKenzie says he was improperly denied a religious diet while in administrative segregation. (FAC at 3A-4, ¶ 18.)  Then beginning in October of 2009 and continuing periodically through the next year, McKenzie says he he could have eaten the meals served to the general prison population but instead was improperly served vegetarian religious meals. The claims pertaining to the first period are primarily First Amendment and free exercise claims, while the claims pertaining to the second period are more focused on equal protection. McKenzie has been transferred away from the prison where he says the violations took place, and has shown no likelihood of being transferred back. The relief he seeks is therefore retrospective only; prospective injunctive relief is unavailable.  *See Johnson v. Moore*, 948 F.2d 517, 519 (9th Cir. 1991) (per curiam) (transfer to another prison generally renders moot a prisoner's request for relief to remedy conditions of confinement).

The first deprivation period, according to the FAC, was prompted by correctional officers' questioning of the validity of his religious diet card. The FAC alleges staff told him there were no records in his files saying he was supposed to receive a religious diet, confiscated the religious diet card, and asked him several times to fill out forms in order to get one. The FAC makes clear they sent him the forms and asked him to sign and return them, even bringing the forms to his cell. He refused, saying he wasn't required to do so, and filed at least one grievance complaining that he shouldn't have been asked to complete a new form. As a result, he didn't receive a special religious diet beginning on February 7, 2009[1] until he was again registered for the religious diet program on May 11, 2009. The FAC makes clear that during this time McKenzie was sometimes provided with food he considered appropriate, but sometimes he was not. On the one occasion he mentions specifically, officers brought him hot dogs, which he refused to eat, even after being told they were made of chicken (which his religious diet permitted him to eat). He says that as a result of refusing to eat the hot dogs, he starved that day.

It should be noted that denial of special religious meals does not mean that McKenzie was put to the choice of either eating food his religion told him was wrong to eat, or eating nothing at all. The original complaint also attached copies of menus (although not for this time period), showing that religiously-appropriate food was served to the general population, though some of the entrees were not religiously-appropriate. In fact, the FAC makes clear McKenzie would like to have been served the same meals as are served to the general population, as long as the entree was not red meat or pork.

The FAC also details McKenzie's grievance process, during which he continued to refuse to complete forms. (*See, e.g.,* FAC at 3A-7, ¶ 4 (explaining that Defendant Vorise came to his cell on March 27, 2009 and asked him to complete some forms concerning his diet, but that he, McKenzie, "refused to sign any such forms, as I did NOT need to.")) He

---

[1] In fact, on February 7, the FAC alleges McKenzie was served hot dogs which staff told him were chicken hot dogs. He apparently disbelieved them and didn't eat the hot dogs. The FAC doesn't allege when the next time was that he was served either red meat or something he suspected was red meat.

says officers mishandled this process by mixing up dates, confusing the facts in their findings, imposing incorrect requirements, and failing to recognize that he had a valid chrono for a religious diet.

After McKenzie was released from administrative segregation, he agrees he was served a religiously appropriate diet. At various times beginning in October of 2009, however, he alleges that the prison went on lockdown and during that time he was served only vegetarian food when chicken or turkey was being served to the general population, but he did receive fish when fish was served to the general population. Lockdowns, he alleges, occurred periodically for a total of eighteen days between October 19, 2009 and August 9, 2010. (FAC at 3A-10, ¶ 2 (alleging he "was served an appropriate diet" until lockdown on October 19), 3A-12, ¶¶ 7, 8 (alleging that "every single time we're on lockdown" Defendant Bell served him a vegetarian meal even when poultry was being served to the general population).) In other words, McKenzie was always served religiously acceptable food during this time; his complaint stems from the fact that, on eighteen lockdown days, he was served vegetarian food instead of the general population's menu whenever poultry was being served.

McKenzie's objections to the R&R repeat the allegations contained in the FAC, and reiterate his arguments in opposition to the motion to dismiss. Concerning his First Amendment claim, he says his rights were violated because he should not have been asked to fill out paperwork for a religious diet card. He says California law provides that he doesn't have to fill out this paperwork a second time after being transferred. He argues for the first time that he has a "protected liberty interest" in not filling out paperwork. (P.'s Obj. to R&R (Docket no. 51) at 4:14–21.) He argues the prison officials' decision not to accept his religious diet card, because it was issued by another institution was not "rationally related to legitimate penological interests." (*Id*. at 5:21–26) He also cites California law requiring that vegetarian meals be available at all prisons, and various other state policies regarding how inmates are to be fed.

/ / /

1    While California law says prisoners should be allowed to continue their religious diets
2 even after transfer to another institution, or different housing placement, 15 Cal. Code. Regs.
3 § 3054(c), it doesn't say anything about when an institution or its officers can ask a prisoner
4 to confirm his continuing eligibility—particularly where, as here, they have no record that he
5 is eligible. Other regulations, in fact, make clear that eligibility for religious diets can change
6 over time, and requires that religious diet lists at each institution be updated. 15 Cal. Code
7 Regs. § 3054.4(b). It permits the chaplains of each institution to ask inmates to sign forms
8 (including religious diet requests) "when applicable." *Id.*, § 3054.4(b)(4).

9    The Court rejects McKenzie's argument that state regulations concerning paperwork
10 create a "protected liberty interest" in not completing paperwork, particularly where the
11 paperwork requested is extremely minimal and obviously related to the issue at hand. (*See*
12 FAC at 48–47 (letter asking McKenzie to sign and return the attached one-page request form
13 which was already partially filled out for him).) This is not to say that institutions could
14 permissibly impose needless heavy burdens or delays, but giving a prisoner a form and
15 asking him to sign it, which is what Defendants did, is *de minimis*. It is not unreasonable and
16 does not substantially burden a prisoner's free religious exercise, so as to burden his rights
17 under the First Amendment or RLUIPA. *See Resnick v. Adams*, 348 F.3d 763, 768–71 (9th
18 Cir. 2003) (prison officials did not violate prisoner's First Amendment rights by requiring him
19 to complete paperwork before receiving religious diet). This is especially true under the
20 circumstances presented here, where officers gave McKenzie a reason why they were
21 asking him to fill out the form.[2]

22    Officers' alleged mishandling of McKenzie's grievance doesn't violate any federally
23 protected liberty interest. *See Ramirez v. Galaza*, 334 F.3d 850, 860 (9th Cir. 2003) (errors
24 of prison officials in reviewing inmate grievances do not invade a protected liberty interest).
25 Furthermore, after completion of the review, McKenzie was granted a religious diet, and he

---

[2] The FAC doesn't allege whether McKenzie's religious diet information was or wasn't in his file, or why it wasn't there. The thrust of the allegations is that McKenzie is alleging the missing information was the fault of someone other than himself, and he wanted Defendants to figure it out and correct it without asking him to fill out the form again.

agrees he began receiving it. The alleged facts bear no indicia of intentional or unreasonable delay, or use of the paperwork requirement as a pretext, or that he wouldn't have been given a religious diet card if he had completed the paperwork. Rather, the allegations suggest the delay was the product of McKenzie's own refusal to comply with minimal paperwork requirements, and his insistence on using the more cumbersome and time-consuming grievance procedure.[3] Ultimately, though, even that was successful, and McKenzie obtained the religious diet he wanted.

Even accepting as true that state prison regulations don't require inmates to complete new paperwork concerning religious diets after being transferred, there is no protected liberty interest in not completing such paperwork. It is a common occurrence in everyday life (not just in prisons) for paperwork to be misdirected, misfiled, or lost; and completing and resubmitting paperwork a second time is an inconvenience almost everyone can relate to. While no one likes filling out forms a second time, it is generally nothing more than an annoyance. And, significantly, there is nothing in the FAC to suggest that completing the form again would have been anything more than a minor annoyance for McKenzie either. Nor is the violation of state law—even accepting that there was a violation—sufficient to give rise to a Due Process claim. *See WMX Techs., Inc. v. Miller*, 80 F.3d 1315, 1319 (9th Cir.1996) ("The Fourteenth Amendment is not a font of tort law to be superimposed upon whatever systems may already be administered by the States.")

With regard to the time McKenzie was in administrative segregation, the FAC makes clear there was some kind of administrative snag and prison officers asked McKenzie to help clear it up by signing and returning a one-page form. Had he done so, he would have received his religious diet. He instead pursued relief through a longer grievance procedure, which was ultimately successful. If prison officers were to blame, it was for the original administrative problem. But once the problem presented itself, the FAC makes clear they

---

[3] The allegations and supporting exhibits show that the request form was shorter than the grievance forms, and required only a chaplain's interview. By contrast the grievance procedure required a scheduled interview by a corrections officer, followed by a written evaluation and decision by another officer.

were willing to fix it, and tried to do so. McKenzie's self-imposed delays don't transform that original minor problem into a violation of his federally-protected rights.

The R&R considered McKenzie's claims in light of the factors set forth in *Turner v. Safley*, 482 U.S. 78, 88 (1987), and found he had failed to state a claim. (R&R, 4:4–12:26.) That portion of the R&R is modified to include the Court's analysis included here. The R&R also found McKenzie had not explained why Defendants Mitchell, Vorise, and Tietz were connected to any alleged violation. (*Id.*, 12:27–16:5.)

Defendants have objected that the R&R mistakenly concluded that Defendants didn't challenge McKenzie's claim that they deliberately refused to honor his diet card once he was placed on the religious diet list. They are correct that the R&R reached this conclusion. (R&R at 7:12–16.)

The R&R's determination is somewhat confusing, because it is unclear which deprivation it is referring to, the first (in the spring of 2009) or the second (from October, 2009 onward). If the R&R is referring to the second deprivation period beginning in October, 2009, the Court disagrees that dismissal is unwarranted. McKenzie alleges that during that period, he was served vegetarian meals while the prison was on lockdown. McKenzie complains about the vegetarian meals for other reasons, but he agrees they are religiously appropriate for him, and the R&R acknowledged as much.

If it is the first period, the Court holds any undue deprivation of a religious diet was so minimal that it did not violate McKenzie's federally-protected rights. McKenzie was placed on the religious diet list on May 11 and transferred out of administrative segregation four days later. He agrees he was given a religious diet after leaving administrative segregation. Therefore, the period at issue here appears to be May 11 to 14, 2009. As discussed above, the delay in getting McKenzie's his religious diet was attributable to him at least until May 11. To the extent McKenzie might be making a claim against Ellis for denying him special religious meals from May 11 to May 14, Ellis may have been wrong, but having less to eat during those four days didn't substantially burden McKenzie's religious practice. *See Bell v. Wolfish*, 441 U.S. 539, n.21 (1979) (*de minimis* level of imposition does not rise to a

constitutional violation). *Compare LeMaire v. Maass*, 12 F.3d 1444, 1456 and n.3 (9th Cir. 1993) (citing *Hutto v. Finney*, 437 U.S. 678, 686-87(1978)) (serving nutritionally inadequate food over the course of a few days was not intolerably cruel)). *See also McMichael v. Pallito*, 2011 WL 6012173, slip op. at *4 (D.Vt. Oct. 24, 2011) (taking note of cases where delays up to eighteen days in providing special religious meals were held not to substantially burden religious practice rights).

It may be that the R&R was assuming the FAC alleged McKenzie's grievance was granted earlier than May 11, but Defendant Ellis still refused to provide him a religious diet. (R&R at 3:9–12). If this is what the R&R means, the Court disagrees. A review of the numerous grievance documents attached to both the original complaint and the FAC show that McKenzie submitted several different grievances, some of which were screened out. The only successful one resulted in his name being added to the religious diet list on May 11—not earlier. In fact, it appears the FAC was merely alleging Ellis <u>should have</u> provided religious meals the entire time, (FAC at 3A-3, ¶ 17), and that the fact that the grievance was later granted proves this. McKenzie's conclusions about what Ellis should have done, however, are not adequate to state or support a claim. *See Warren*, 328 F.3d at 1139.

Under the Prison Litigation Reform Act, the Court is required to dismiss McKenzie's complaint, to the extent it fails to state a claim. *See* 28 U.S.C. §§ 1915A(b)(1). The Court therefore rejects the R&R's recommendation that because "Defendants do not challenge the adequacy of Plaintiff's claims that officers deliberately refused to honor his diet once he was placed on the list[,] . . . the Court [need] not address those claims." Rather, those claims will be dismissed.

With regard to the second period of deprivation, most claims are against Defendant Bell. The R&R found that although McKenzie's name was on the religious diet list, "[t]hroughout the lockdown, Bell refused to Honor Plaintiff's religious diet." (R&R at 4:21–22.) The R&R bases this conclusion on its finding that, when the general population was being served chicken or turkey, Bell brought McKenzie a vegetarian meal, although he brought McKenzie a regular tray when fish was being served. (*Id*. at 4:21–26.) It is true the FAC

characterized this as denial of a religiously appropriate diet, it was in fact only a denial of poultry. His allegations make absolutely clear he is not religiously prohibited from eating vegetarian meals. Serving McKenzie vegetarian meals during lockdowns was therefore not a denial of his right to a religiously appropriate meal, and the Court also rejects this portion of the R&R.

The R&R also analyzed McKenzie's treatment during lockdowns under a Fourteenth Amendment analysis. McKenzie's theory is that he was entitled not to be deprived of food he can eat (*i.e.*, poultry) and served food he doesn't like (*i.e.*, beans), simply because he was on the religious diet list. Under California state law, the California Department of Corrections and Rehabilitation is required to provide at least three types of religious meals: vegetarian, kosher, and "religious meat alternate" (halal). *See* 15 Cal. Code Regs. §§ 3054 and 3054.1–3. (The third option, halal, was added on February 2, 2010.)

As the R&R explains it, McKenzie is asking Defendants to craft a special Rastafarian menu for him. Because prison officials did not do this but simply offered him an ordinary ovo-lacto-vegetarian diet, McKenzie argues that these officers discriminated against him on the basis of his religion. The R&R relies on *Shakur v. Schriro*, 514 F.3d 878 (9th Cir. 2008) in its analysis, and determined that the Court must first analyze the burdens of providing a special Rastafarian diet before ruling on this claim, and therefore recommended denying the motion to dismiss.

Defendants have objected, pointing out that they had no power to effect menu changes, since they are merely cooks and correctional officers and lack the power to adjust menu options. This objection is well-taken, except as to Defendant Mitchell. McKenzie has not alleged the other Defendants designed the menus or had the power to design them, nor does he allege they had the power to make any of the changes he wanted. The Court cannot fault those Defendants for doing what they had no power to do.

The Court also disagrees with the R&R's reliance on *Shakur.* That case addressed the complaint of a Muslim inmate who was offered vegetarian meals, but could not eat them because they caused gastroinestinal problems and irritated his hiatal hernia, both of which

which, according to his religious beliefs, caused him to be spiritually impure. 514 F.3d at 888, 889 (noting plaintiff's argument that "he must choose among eating the vegetarian diet that is Halal but disruptive to his religious activities, eating the regular diet that is . . . forbidden by his religion, or changing his religious designation"). In other words, both the non-vegetarian and the vegetarian meal were unacceptable to the plaintiff for religious reasons. *See Navajo Nation v. U.S. Forest Serv.*, 535 F.3d 1058, 1078 n.24 (9th Cir. 2008) (characterizing Shakur's dilemma: ". . . Shakur could have a meal in prison and avoid starvation only if he violated his religious beliefs"). Here, McKenzie's complaint is merely that the beans included in the vegetarian plan "gave me gas and ultimately a bacteria in my lower-stomach — 'H-Pylori.'" (FAC at 17.)[4] McKenzie's dilemma here was much less stark.

In contrast to the *Shakur* plaintiffs, McKenzie isn't alleging that vegetarian meals are religiously unacceptable to him, merely that the beans cause him gas and, he believes, gave him H. Pylori. But McKenzie has never alleged any doctor or other medical professional told him he should avoid beans, or that beans or flatulence would give him H. Pylori or cause any other health problems. Nor was McKenzie on any kind of special medical diet. The only medical information in the FAC is a copy of a prescription drug label for Omeprazole, a medication intended to treat excessive stomach acid. (FAC, Appendix C2.) Defendants' failure to accept McKenzie's self-diagnosis doesn't support a constitutional claim or a claim under any other federal law. While gas cannot be pleasant for either McKenzie or anyone else, it did not amount to an unconstitutional or illegal burden.

The R&R also recommends a finding that requiring McKenzie to forego poultry occasionally amounts to unconstitutional discrimination against him on the basis of his religion. *See Shakur* at 888 (citations omitted) (a burden is substantial if it denies "an important benefit" and thereby puts substantial pressure on a plaintiff to modify his behavior and violate his beliefs). Denial of the benefit of eating poultry on occasion falls far short of this standard. The Court therefore rejects this portion of the R&R.

---

[4] It is unclear what McKenzie means when he says beans gave him H. Pylori. H. Pylori, or Heliobacter Pylori, is a bacterium that is associated with various stomach ailments, but it is not itself a disease.

It is also worth noting that McKenzie complains of eighteen isolated days of violations over the course of about a year, when the prison was on lockdown. The sporadic character of these claimed violations, combined with the increased demands on prison personnel during lockdowns further weakens his claims.

The Court also notes that it has ruled on these points already, and that they are therefore the law of the case. In his report and recommendation that recommended dismissal of the original complaint, Judge Dembin held:

> Unlike in *Shakur*, Plaintiff does not complain that the vegetarian diet he is receiving imposes a burden on his religious beliefs. The freedom to pick and choose which tray he wishes to receive at each meal of the day depending on the menu items is not included in the right to free exercise of religion. Nor does the First Amendment require the prison to determine which meals this particular Defendant may be willing to have on a daily basis.

(Docket nos. 31, 11:9–14). McKenzie filed objections, but he did not object to this holding, which the Court adopted. (*See* Docket no. 34 (order adopting R&R).)[5] This is not to say that the Court could not reconsider and revise its earlier decisions, only that earlier rulings "should be followed unless there is substantially different evidence . . . new controlling authority, or the prior decision was clearly erroneous and would result in injustice." *Handi Investment Co. v. Mobil Oil Corp.*, 653 F.2d 391, 392 (9th Cir. 1981). None of these exceptions applies here.

Finally, the R&R analyzes McKenzie's claims almost as if McKenzie were representing a class seeking prospective relief, which he is not. For example, it says

> Plaintiff alleges that certain religious groups are offered diets containing meat, while Rastafarians are not. Accepting Plaintiff's FAC as true, Rastafarian inmates have fewer dietary options than Muslim or Jewish inmates, and do not have the option to receive meat. <u>Even though Plaintiff does not allege that his current diet violates his religious beliefs, it is sufficient that he asserts that Rastafarian inmates are discriminated against and given inferior dietary options.</u>

---

[5] McKenzie did object that being served a vegetarian meal when his cell-mate was served poultry, and he mentioned that Jewish and Muslim inmates were served special meals. But his argument was that this amounted to serving him a religiously unacceptable diet, and dictating to him what an acceptable Rastafarian diet was. (Obj., Docket no. 33 at 6–7.) The former is wrong, and contrary to his claims, while the latter might be considered insulting but is not a violation of his rights. McKenzie has never argued that his religious beliefs require him to eat poultry when served, only that he was allowed to eat it.

(R&R at 17:24–18:1.) (emphasis added). McKenzie is not claiming to represent Rastafarians generally, nor could he do so. Because he cannot obtain relief on his own behalf, that is the end of the line for this claim. McKenzie lacks standing to represent the interests of other inmates, and as a *pro se* litigant he cannot maintain a class action. "Pro se prisoner plaintiffs may not bring class actions. They are not qualified to act as class representatives as they are unable to fairly represent and adequately protect the interests of the class." *Abel v. Alameda Cnty.*, No. 07–3247, 2007 WL 3022252, at * 1 (N.D.Cal., Oct.13, 2007) (citing Fed.R.Civ.P. 23(a)). McKenzie is particularly unqualified to represent the claims of any other prisoners at Calipatria because his own claim for prospective relief is moot. Furthermore, his claim that he wanted to eat poultry was particular to himself and not shared by all Rastafarians. *See, e.g., Johnson v. Sisto*, 2009 WL 2868724 at *1 (E.D.Cal., Sept. 2, 2009) (noting allegation by Rastafarian inmate that his faith required him to eat a vegan diet).

The Court therefore **REJECTS** this portion of the R&R, and holds that McKenzie's claims for violations beginning in October of 2009 must also be dismissed.

The FAC includes one other allegation that might be construed as a claim, although it was never raised before. This allegation pertains to Defendant Bell "scanning" or reading a letter he had written to an attorney. (FAC at 3A-11, ¶ 5.) When McKenzie refused to allow Bell to scan the letter, Bell refused to accept it for mailing. The attached exhibit C2 shows the appeal was denied at the director's level, and thus is exhausted.

This claim is based on state law only; McKenzie claims Bell scanned or read his confidential mail in violation of California regulations. But the allegations don't show that Bell violated state law. It is also clear that federal law permits state prison officials to inspect legal mail, and McKenzie does not allege that any federally-protected right was violated by the prison's policy requiring inspection of outgoing mail. *See Davis v. Suvoy*, 2011 WL 1196095 at *3 (N.D.Cal., March 29, 2011) (citing cases for the principle that prison officials may institute procedures for inspecting legal mail). *See also* FAC, Appendix C2 (discussing state-adopted procedures requiring prison officials to scan legal mail).

/ / /

1    McKenzie has already been given an opportunity to amend his complaint once, and has not done so successfully, nor is there any reason to think he could do so if given additional opportunities to try. Rather, the FAC's greater specificity shows that the greatest alleged deprivations of McKenzie's rights were largely occasioned by his own refusal to comply with minimal procedural requirements, and any other deprivations were at most *de minimis* and did not give rise to any cognizable claims, either under RLUIPA or under 42 U.S.C. § 1983, or under any other federal law.

The dismissals of his federal claims are therefore with prejudice. It may be, however, that McKenzie has some claims based on state law. He has alleged violation of various state regulations and statutes. While such violations do not give rise to any federal claims, they may give rise to state claims. But because the parties are not diverse, and because no federal claims remain, this case is remanded to the state court from which it was removed, so that a state court can make the final determine whether the complaint should be finally dismissed.

The R&R reached the issue of qualified immunity. The Court's analysis undermines that portion of the R&R, but in view of the fact that all federal claims are being dismissed, the qualified immunity issue is moot. That portion of the R&R is rejected as unnecessary.

**Conclusion and Order**

For reasons set forth above, McKenzie's objections to the R&R are **OVERRULED**, and Defendants' are **SUSTAINED**. The Court **MODIFIES** the R&R as discussed above, and **ADOPTS** the modified R&R. Whether analyzed under RLUIPA or as claims under 42 U.S.C. § 1983, McKenzie's federal claims do not warrant relief. All McKenzie's federal claims are **DISMISSED WITHOUT LEAVE TO AMEND**. This action is **REMANDED** to the Superior Court of California for the County of Imperial.

**IT IS SO ORDERED**.

DATED: September 12, 2012

*Larry A. Burns*

**HONORABLE LARRY ALAN BURNS**
United States District Judge